# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| POLINA (PAULA) SAMOVSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 4261 |
| ) | Hon. Marvin E. Aspen |
| MACY'S, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Macy's Retail Holdings, Inc.'s Motion to Dismiss or, in the Alternative, to Stay Case and Compel Arbitration. Macy's contends that the employment-related claims asserted by Plaintiff Polina Samovsky are covered by the parties' arbitration agreement. For the reasons set forth below, we deny the motion.

## BACKGROUND

According to the amended complaint filed June 18, 2012, Samovsky worked at the Old Orchard Macy's store from September 2008 until she quit in July or August 2010. Samovsky's complaint and its exhibits—particularly her EEOC charge and its supporting narrative—generally describe incidents of alleged discrimination during her employment at Macy's. In her March 12, 2012 EEOC charge, for example, Samovsky claimed discrimination on the basis of her race, color, religion, national origin, age, disability and retaliation. (Am. Compl. at 28.[1]) Her EEOC charge apparently involved claims that Macy's' personnel mocked

---

[1] In referring to the handwritten pages of the complaint and supporting materials, we will cite to the page number assigned by CM/ECF.

and bullied Samovsky, and failed to accommodate her disability, until she decided to quit. (*See id.* at 7–12.) The focus of her federal complaint, however, is Macy's' refusal to hire her despite her repeated efforts to obtain re-employment from September through December 2011. (Am. Compl. ¶¶ 5, 12; *see also id.* at 13–23.) Samovsky alleges here that she was "denied employment" beginning September 12, 2011. (*Id.* ¶ 5.) She further alleges that Macy's "failed to hire" her and retaliated against her "in the process of hiring" by rejecting her for the same position she had previously held. (*Id.* ¶ 12.) She complains that Macy's treated her as a "laughing stock every time at every scheduled appointment," particularly the interview scheduled for December 29, 2011. (*Id.* ¶ 13.) As a remedy, Samovsky asks that Macy's re-employ her, accommodate her disabilities, and pay damages for her emotional and economic hardships. (*Id.* ¶ 16.)

In response to the complaint, Macy's filed the instant motion to dismiss based on an arbitration provision applicable to its employees who, like Samovsky, agreed to submit employment grievances to an arbitrator. In its briefs and supporting documentation, Macy's describes an internal dispute resolution program, known as Solutions InSTORE, that allows employees to address employment-related problems easily, economically, and fairly. (*See* Mem. at 2–5; Decl. of Robert Noeth ¶¶ 4–15 & Exhs.) This program involves four progressive steps, with arbitration as the fourth and final step for the most serious employment disputes. According to the Solutions InSTORE Plan Document, "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment . . . shall be settled exclusively by final and binding arbitration." (*See* Noeth Decl., Ex. A, Plan Document at 6 (Step 4, Art. 2).) Although new hires are permitted to decline participation in the

arbitration step of Solutions InSTORE, Macy's contends that Samovsky did not exercise that option and is thus bound to arbitrate her claims.

Samovsky, for her part, does not deny submitting to the arbitration step of Solutions InSTORE. (Resp. at 2, 7–9.) While she argues in passing that she did not carefully read the Solutions InSTORE materials or understand the consequences of failing to opt-out of arbitration, her primary argument is much simpler. Samovsky contends that the arbitration agreement from her prior term with Macy's does not apply to her current claims because they arose only after she left her earlier employment and after the agreement expired. (*Id.* at 1–4, 6, 10.)

## ANALYSIS

**A.     Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the application and interpretation of arbitration clauses in commercial contracts, including employment agreements, for both state and federal courts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–112, 121 S. Ct. 1302, 1307 (2001); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987); *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that "a party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA directs federal courts to stay legal proceedings when a particular dispute is found to be subject to contractual arbitration. *Id.* § 3.

The FAA reflects a liberal policy in favor of arbitration as a means of settling disputes. *Id.* § 1; *see Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l,* 1 F.3d 639, 641 (7th Cir.

1993). Despite strong federal public policy in favor of arbitration, courts ultimately interpret arbitration agreements based on the intent of the parties. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). A court cannot force a party to arbitrate a claim it has not previously agreed to arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett*, 174 F.3d 907, 909 (7th Cir. 1999); *Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1255 (7th Cir. 1993) (citing *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986)). A court also may not expand the application of an arbitration clause beyond its intended scope. *Am. United Logistics*, 319 F.3d at 929; *AGCO Corp.*, 216 F.3d at 593; *Int'l Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 230 (7th Cir. 1993).

Thus, when presented with a question of arbitrability, the court will defer to the parties' intent to determine: (1) whether a valid arbitration agreement exists; and (2) whether the scope of the parties' dispute falls within that agreement. *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2782, — U.S. — (2010); *Webb v. Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013, at *2 (N.D. Ill. May 31, 2012); *Stone v. Deorge*, 245 F. Supp. 2d 878, 881 (N.D. Ill. 2002). As Samovksy has not seriously challenged the validity of the Solutions InSTORE arbitration provision, the sole issue before us is whether it encompasses her current claims against Macy's.[2]

---

[2] "Like other contracts . . . [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc.*, 130 S. Ct. at 2776 (internal quotation omitted). Here, however, Samovsky has not articulated or supported an argument that the arbitration provision lacks consideration or mutuality, violates public policy, results from deceit or duress, or is unconscionable. And although she contends that new hires do not actually read all the information handed to them, she does not appear to argue that Macy's failed to provide her with written information about

**B.     Scope of the Arbitration Agreement**

As mentioned earlier, the Solutions InSTORE arbitration provision covers "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment." (Noeth Decl., Ex. A, Plan Document at 6 (Step 4, Art. 2).) Thus, as Macy's points out, the plain language of this contract term is sufficiently broad to cover discrimination claims arising from or relating to Samovsky's employment at Macy's from 2008 through 2010, including any claim that she was forced to quit for unlawful reasons.

Macy's reliance on this language is misplaced, however, because Samovsky is not suing based on alleged discrimination during or related to her prior employment. As we construe the amended complaint, Samovsky's lawsuit stems solely from Macy's failure to hire her (or re-hire her, as the case may be) in late 2011. When asked on the complaint form to provide the date of the alleged misconduct, Samovsky states that the discrimination began on or about "September 12, 2011" when Macy's denied her employment. (*Id.* ¶ 5.) She later alleges that Macy's "failed to hire" her and retaliated against her "in the process of hiring" by rejecting her application. (*Id.* at 12.) Nowhere in the complaint itself does Samovsky mention any discrimination occurring during her prior employment at Macy's. Samovsky's opposition to the motion further supports this reading of the complaint, as she indicates that "the lawsuit case [sic] really started on the

---

Solutions InSTORE. (*See* Resp. at 7.) To the contrary, Macy's records show that Samovsky electronically signed a form acknowledging her receipt of notice about Solutions InSTORE when her employment began. (Decl. of Darby Odendahl ¶¶ 3, 7, 12–13.) Moreover, Samovsky acknowledges that she probably did not sign the opt-out form declining to participate in arbitration, (*id.* at 2), which Macy's records confirm, (Noeth Decl. ¶¶ 28–29). Under the circumstances, we need not question the validity of the arbitration agreement. We also have no reason to question the fairness of the arbitration process established by Solutions InSTORE, which Samovsky has not challenged.

basis of discrimination toward me during the fall of 2011, when I wanted to get a job at Macy's 2d [sic] time." (Resp. at 1; *see also id.* at 3 ("I filed a lawsuit against Macy's discrimination for not hiring me.").)

Samovksy attached several documents to her amended complaint, including her March 12, 2012 EEOC charge of discrimination and a detailed handwritten narrative she prepared for the EEOC. (Am. Compl. at 7–28.) Both of these documents describe or reference instances of perceived discrimination during the course of Samovsky's prior employment at Macy's from 2008 to 2010. Macy's argues that these materials demonstrate that Samovsky's lawsuit asserts claims from that time period, as well as the claim concerning her reapplication in 2011. Although we initially assumed as much in our ruling on Samovsky's motion to proceed *in forma pauperis*, (*see* Dkt. No. 7), we cannot agree with this position after closer consideration of the complaint. Samovsky raised these issues before the EEOC but simply has not advanced them in this forum. As the master of her complaint, Samovsky "may include (or omit) claims or parties" as she chooses. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (explaining that plaintiffs could include or exclude claims or parties "in order to determine the forum"); *Myles v. U.S.*, 416 F.3d 551, 552 (7th Cir. 2005) ("[E]ven *pro se* litigants are masters of their own complaints and may choose who to sue—or not sue."); *Dunn v. Astrue*, No. 07 C 1644, 2008 WL 111053, at *1 (S.D. Ind. Jan. 8, 2008) (recognizing that "the composition and content of the complaint are entirely the responsibility of the plaintiff"); *Eby v. Allied Prods. Corp.*, 562 F. Supp. 528, 530 (N.D. Ind. 1983) ("Nonetheless, it is generally accepted that the plaintiff is master of his own complaint and is free to choose not to assert an available federal claim.") Here, Samovsky has elected not to sue Macy's for any discriminatory events that took place

prior to September 2011, when she began seeking reeemployment in earnest.[3] We must give "deference to the specific claims which plaintiff has brought and accept[] that plaintiff has purposefully avoided those otherwise-actionable claims not alleged." *Henderson v. Vill. of Dixmoor*, 99 F. Supp. 2d 940, 944 (N.D. Ill. 2000).

With this understanding of the limited scope of the amended complaint, we return to the arbitration provision and readily conclude that it does not apply to Samovsky's claims. Her claims concerning Macy's' failure to re-hire her in 2011 do not arise out of, or relate to, her employment from 2008 through 2010 or the cessation thereof. They are factually and legally distinct, involving a different legal framework and evidentiary focus.[4]

In addition, as Samovsky repeatedly states in her opposition, there was no other arbitration provision in effect when she sought re-employment. (Resp. at 2–4, 6, 10.) She contends that, as an applicant, she was not bound by any contract or agreement with Macy's. Common sense dictates as much, and Macy's does not argue otherwise. Moreover, the Solutions InSTORE Plan Document provides that an employee who becomes re-employed with Macy's "following a break in service greater than sixty (60) days . . . is treated as a new hire and is given the opportunity to elect to be excluded from arbitration during the prescribed time period." (*See*

---

[3] If Samovsky believes we have misunderstood her amended complaint—that is, if she in fact intended to sue Macy's for discrimination related to her prior employment—she must ask for permission to file a second amended complaint to expressly add such claims. Of course, such claims may then be covered by the Solutions InSTORE arbitration provision and will be subject to evaluation in light of Macy's' instant motion.

[4] We understand Macy's' concern with this interpretation. (*See* Reply at 3.) Our ruling, however, does not compromise the value of the arbitration provision or its application to disgruntled former employees. We hold only that the provision does not apply here, where the plaintiff's claim arises from conduct occurring outside and unrelated to her prior term of employment.

Noeth Decl., Ex. A, Plan Document at 6 (Step 4, Art. 1).) While this language did not apply to Samovsky, it indicates that her prior election to participate in arbitration would not have been binding had she been re-hired in 2011. Upon re-hire, she would have been required to enter into a new arbitration agreement, or opt out. This provision supports our conclusion that Samovsky was not bound by any new agreement at the time she sought re-employment.

## CONCLUSION

In sum, the Solutions InSTORE arbitration provision to which Samovsky acquiesced in 2008 does not apply to her current claim about Macy's' failure to re-hire her in 2011. As no other arbitration agreement was in effect, we cannot require her to submit this particular dispute to arbitration. Macy's' motion is therefore denied. It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: January 10, 2013